IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **PHREESIA, INC.,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-21-678 |
| **CERTIFY GLOBAL, INC.,** *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Plaintiff Phreesia, Inc. ("Phreesia") filed suit against defendants Certify Global, Inc. d/b/a Certify ("Certify"), Certify Health, Rolling Rock Software Pvt Ltd., and Timothy Goodwin, Certify's Vice President, alleging a conspiracy to misappropriate Phreesia's trade secrets, copy its software design, and interfere with its customer relationships. ECF 1 & 27. This Court granted in part the defendants' motion to dismiss, ECF 28, and dismissed Phreesia's tortious interference claim. ECF 36. The defendants filed an answer, and Certify asserted two counterclaims against Phreesia. ECF 37. Certify claims tortious interference with a business relationship (Count I) and unfair competition (Count II) based on alleged false and disparaging statements made by Phreesia to a prospective Certify business associate. *Id.* Phreesia moves to dismiss the counterclaims on the grounds that Certify has not adequately alleged misconduct or any redressable harm. ECF 47. The motion is fully briefed. ECF 50 & 55. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the motion to dismiss is denied.

**I.    Background**

Certify and Phreesia are competitors that offer patient intake software for use by healthcare providers. ECF 37, ¶¶ 6–7. Certify is the smaller of the two companies and has less market share. *Id.* ¶ 15. In the spring of 2020, global healthcare provider Providence St. Joseph Health a/k/a

Providence Health & Services ("Providence") contacted Certify about engaging its services. *Id.* ¶ 8. Following meetings over the summer, Providence issued in October 2020 a Request for Proposal ("RFP") to Certify, Phreesia, and non-party Epic Systems Corporation requesting proposals and bids regarding patient intake software. *Id.* ¶¶ 9–10. As part of the RFP process, Providence met with Certify and contacted various references provided by Certify, including a large U.S. health system that is a significant client of Certify (the "Certify Client"). *Id.* ¶ 11. In early January 2021, a senior executive with Providence informed Certify that it had outperformed the other candidates because of the breadth of services it offered and would be selected as the winner. *Id.* ¶ 13. Certify expected the Providence account to generate approximately $60 million in revenues over three years. *Id.* ¶ 14.

Certify believes that Phreesia learned of Providence's anticipated selection and "undertook an unlawful plan to interfere with" the business relationship. *Id.* ¶ 15. On January 22, 2021, a senior executive with Providence called Certify's founder and managing director, Marc Potash, and advised that there was a rumor circulating that the Certify Client planned to replace Certify with Phreesia at all its locations. *Id.* ¶¶ 8, 16. The rumor was false, and the Certify Client remains a customer of Certify. *Id.* ¶ 17. Potash contacted the Certify Client that afternoon, and an executive with the Certify Client responded over email that there were no discussions about replacing Certify, that it would be helpful to know who was allegedly making the false claims, and that the company was too busy "to be distracted with rumors." *Id.* ¶ 18. Certify believes Phreesia spread the false rumor to wrongfully interfere with the impending Providence contract and Certify's relationship with the Certify Client. *Id.*

Over the next few weeks, Providence began conducting initial conferences with Certify to discuss implementing Certify's patient intake platform. *Id.* ¶ 19. Certify believes that around this

2

time, Phreesia informed Providence that Certify had engaged in the conduct Phreesia alleges in its complaint in this lawsuit—that Certify had unlawfully accessed Phreesia's system in 2018 and copied its patient intake platform and code. *Id.*; *see* ECF 27.  Phreesia sued Certify shortly after contacting Providence.[1]  ECF 37, ¶ 19.  Certify maintains that Phreesia's allegations (and, thus, its alleged statements to Providence) are false.  *Id.*  Certify accessed the Phreesia platform lawfully and at the direction of one of Phreesia's clients in order to collect the client's patient data from the system, and it "never employed a patient intake platform that copied Phreesia's inferior system." *Id.* ¶ 22.  Certify also views the timing of Phreesia's allegations as suspicious; Phreesia records access to its system, so it knew about Certify's access when it occurred in 2018 but only contacted Providence and filed suit after it "thought it lost the Providence RFP to Certify[.]"  *Id.* ¶ 20.

Providence never executed a contract with Certify, and the business relationship ended.  *Id.* ¶ 23.  Certify blames Phreesia's false statements and rumormongering, and it claims tortious interference with its business relationship and unfair competition.  *Id.* ¶¶ 24–34.  After reviewing the defendants' answer and Certify's counterclaims, Phreesia filed a letter expressing its intent to file a motion to dismiss the counterclaims and previewing its arguments.  ECF 43.  The Court inquired whether Certify wanted to amend its counterclaims in response, ECF 44, and Certify elected to stand by its pleading, ECF 46.  Phreesia then moved to dismiss both counterclaims with prejudice on the grounds it previously had identified.  ECF 47.

## II. Standard of Review

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted."  *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir.

---

[1] Phreesia first filed in New York.  ECF 37, ¶ 19.  The court dismissed that suit for lack of jurisdiction.  *Id.* ¶ 19 n.1.  This lawsuit followed.

2021) (quoting Fed. R. Civ. P. 12(b)(6)).  To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court.  *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plausible claim is more than merely conceivable or speculative.  *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).  The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully."  *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)).  But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory.  *Jesus Christ is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022).  But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments."  *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)).  Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard."  *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)).  The Court does not "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

**III.   Discussion**

Phreesia argues that Certify's counterclaims are not supported by specific factual allegations as required by Rules 8 and 9(b) of the Federal Rules of Civil Procedure.  It contends that Certify alleges no specific conduct by Phreesia and no basis for the assertion that Phreesia caused it harm.  It also asserts the litigation privilege to the extent the counterclaims are based on Phreesia's allegations and legal claims against Certify.  Certify counters that Rule 9(b)'s heightened pleading requirements do not apply to its counterclaims, that is has plausibly alleged tortious interference and unfair competition consistent with Rule 8, and that the litigation privilege is inapplicable.

**A.  Applicability of Rule 9(b)**

Rule 9(b) provides a heightened pleading standard for allegations of fraud.  It states that, in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Such circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).  Allegations regarding a party's mindset, however, "may be alleged generally."  Fed. R. Civ. P. 9(b).

Phreesia contends Rule 9(b) applies to Certify's counterclaims because they sound in fraud.  Certify responds that the heightened pleading standard does not apply because it is not claiming Phreesia committed any fraud against it, Providence, or any other third party.  Rather, Certify asserts, its counterclaims are based on Phreesia's "false, defamatory, and disparaging statements and injurious falsehoods."  ECF 50, at 13.

It is well-settled that the "requirements of Rule 9(b) apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) (citing *Pitten v. Jacobs*, 903 F. Supp. 937, 951 (D.S.C. 1995)). This is so because, as the Fourth Circuit has held, "Rule 9(b) refers to 'alleging fraud,' not to causes of action or elements of fraud." *Cozzarelli v. Inspire Pharma. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008). "Allowing a plaintiff to" avoid the rule through superficial labels and artful pleading "would undermine one of the primary purposes of Rule 9(b): protecting defendants from the reputational harm that results from frivolous allegations of fraudulent conduct." *Id.* (citing *Harrison*, 176 F.3d at 784). In *Cozzarelli*, the Fourth Circuit applied Rule 9(b) to securities fraud claims based on alleged false statements in a prospectus. *Id.* The Court ignored the plaintiffs' express disclaimer of "any allegation that could be construed as alleging fraud" with respect to those claims and concluded that the allegations sounded in fraud. *Id.*

The parties do not identify any appellate decision addressing this situation—a tortious interference or unfair competition claim based on allegedly false and disparaging statements made to a potential business relation. Instead, they cite as persuasive authority more than a dozen in- and out-of-circuit cases going different ways for different reasons. Of these, the Court is persuaded to follow two District of Maryland opinions that addressed roughly analogous situations and did not apply Rule 9(b). In *Master International Co. v. Blackstone International, Ltd.*, plaintiff manufacturers alleged that the defendant middlemen falsely told the plaintiffs' retailer partners that the plaintiffs "were to blame for failings of quality and timeliness." No. JKB-12-3758, 2013 WL 3147010, at *7 (D. Md. June 18, 2013). The Court concluded that "[t]ortious interference is not a fraud-based claim, so Rule 9(b) is not applicable." *Id.* The disparaging statements were clearly separate from other alleged statements the plaintiffs claimed constituted fraud, to which

6

Rule 9(b) applied. *Id.* at *5. The disparaging statements were made to the retailers' employees and included falsely laying blame for undeliverable goods as well as false "rumors about Plaintiffs' financial condition and product quality." ECF 1 in No. JKB-12-3758, ¶ 31–37. The fraud claim, meanwhile, was based on different statements in which the defendants promised payments to induce the plaintiffs to ship them additional goods. *Master Int'l*, 2013 WL 3147010, at *4–5.

Likewise, in *Coastal Laboratories, Inc. v. Jolly*, the plaintiff brought claims for fraud and tortious interference based on separate conduct and statements, and the Court applied Rule 9(b) to the former but not the latter. 502 F. Supp. 3d 1003 (D. Md. 2020). The plaintiff claimed fraud based on an alleged misrepresentation by the defendant that it would take an action to benefit the plaintiff. *Id.* at 1026. The plaintiff's tortious interference claim, meanwhile, was based on allegations that the defendant refused services to the plaintiff's customers, told them to contract directly with a competitor, and, notably, falsely disparaged the plaintiff to its customers. *Id.* at 1025. The Court applied Rule 9(b) to the fraud claim but did not address the rule's applicability to the tortious interference claim, likely because the latter was not premised solely on the fraud allegations. Although *Coastal Laboratories* did not consider explicitly the rule's applicability, it nonetheless stands as an example of this Court not applying Rule 9(b) to a tortious interference claim that was based, in part, on false and disparaging statements to third party business relations.

These cases are consistent with the text of Rule 9(b), which refers to allegations of fraud. In both cases, the tortious interference claims were not based on allegations of fraud, but rather allegations of false and disparaging statements that caused harm to a business relationship. Certify's counterclaims are no different. Admittedly, this reasoning draws a fine line. But none of the cases identified by Phreesia persuades the Court to reach a different result. Almost all of Phreesia's cases involved non-fraud claims that were based on allegations of traditional fraud. *See,*

*e.g.*, *C&R Caulking, LLC v. Bank of Am., N.A.*, No. JKB-21-499, 2021 WL 2661875, at *6 (D. Md. June 29, 2021) (applying Rule 9(b) to tortious interference claim based on the defendant defrauding the plaintiff's client and thereby inducing the breach of a contract); *United States v. Kernan Hosp.*, 880 F. Supp. 2d 676, 683–84 (D. Md. 2012) (applying Rule 9(b) to non-fraud claims that were concededly based on the same allegations as the government's False Claims Act claims); *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1076 (8th Cir. 2018) (applying Rule 9(b) to statutory claims based on allegations that the defendant induced the plaintiff to act through false representations that "amounted to fraud").  In the sole case that employed different reasoning, this Court applied Rule 9(b) to claims with allegations that included the word "fraud." *Driver Opportunity Partners I, LP v. First United Corp.*, No. RDB-20-2575, 2021 WL 82864, at *5 n.2 (D. Md. Jan. 8, 2021).  This included an unfair competition claim that merely parroted the elements of unfair competition by alleging the defendant engaged in "fraud, deceit, trickery or unfair methods." *Id.*  But the heightened standard did not matter in practice because the unfair competition claim failed due to obvious deficiencies that would have been fatal under Rule 8—for example, the parties were not competitors. *Id.* at *11.  None of these cases counsels the application of Rule 9(b) in this case.

Certify's counterclaims must comply with Rule 8, not Rule 9(b).

### B. Tortious Interference

In Maryland, a claim of tortious interference with prospective business or economic relations has four elements: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause (which constitutes malice); and (4) actual damage and loss resulting." *Kaser v. Fin. Prot. Mktg., Inc.*, 831 A.2d 49, 53 (Md. 2003) (quoting *Willner v.*

*Silverman*, 71 A. 962, 964 (Md. 1909)).  The plaintiff also must identify the "possible future relationship which is likely to occur, absent the interference, with specificity." *Mixter v. Farmer*, 81 A.3d 631, 638 (Md. Ct. Spec. App. 2013) (quoting *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 546 (D. Md. 2006)).

Maryland courts are careful to separate tortious interference from permissible competition in the marketplace.  *See Nat. Design, Inc. v. Rouse Co.*, 485 A.2d 663, 676 (Md. 1984).  To that end, both "tortious intent and improper or wrongful conduct" on the part of the defendant are necessary.  *Kaser*, 831 A.2d at 54 (quoting *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 119 (Md. 1994)).  Tortious intent is intent "to harm the plaintiff or to benefit the defendant at the expense of the plaintiff."  *Macklin*, 639 A.2d at 119.  The underlying conduct must be "independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships."  *Kaser*, 831 A.2d at 53 (quoting *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.*, 650 A.2d 260, 271 (Md. 1994)).  Qualifying conduct includes "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits . . . in bad faith."  *Alexander & Alexander*, 650 A.2d at 271.  "In addition, 'actual malice,' in the sense of ill will, hatred or spite, may be sufficient to make an act of interference wrongful where the defendant's malice is the primary factor that motivates the interference," unless the "animosity was incidental to [the] pursuit of legitimate commercial goals."  *Id.*

Certify alleges that Phreesia spread a false rumor to Providence that the Certify Client was switching to Phreesia and informed Providence of its allegations against Certify around the time it first filed suit.  ECF 37, ¶¶ 15, 17, 19, 25.  Following Phreesia's actions, Providence ended its pursuit of a business relationship with Certify.  *Id.* ¶ 23.  Phreesia argues these allegations are too

9

vague to meet even the lower pleading standard of Rule 8 because they do not refer to any specific act by Phreesia and do not offer any factual basis to infer that any potential act by Phreesia motivated Providence to walk away.

      Certify alleges facts from which the Court may infer the elements of tortious interference with a business relationship. It alleges that Phreesia undertook intentional and willful acts by spreading a false rumor to Providence that the Certify Client was going to replace Certify with Phreesia at all its locations and by subsequently making false allegations against Certify and informing Providence of those allegations. That Phreesia was behind the rumor is a reasonable inference from the fact that the rumor, if true, was favorable to Phreesia and that, at the time Providence reported hearing the false rumor, Phreesia was competing with Certify for the lucrative Providence contract. It also is reasonable to infer that Phreesia acted to damage Certify's business relationship with Providence because of the competitive context and the suggestive timing of Phreesia's allegations against Certify, years after the conduct at issue but only a short while after Providence decided to select Certify over Phreesia. The spreading of false and disparaging statements could constitute defamation or injurious falsehood so as to satisfy the third element, and there is no obvious justification or legitimate commercial reason to spread a false rumor or false allegations about a competitor. Finally, Certify alleges Phreesia's actions were successful and led Providence to end the potential business relationship. The causal relationship is supported by the allegation that Providence contacted Certify after hearing the rumor, suggesting it considered the rumor at least somewhat credible and important to its decision. It is further supported by the timing of Providence's decision to end the potential relationship with Certify just weeks after hearing the rumor and learning about Phreesia's allegations against Certify. These allegations, when viewed together and in the light most favorable to Certify, satisfy Rule 8's

pleading requirements. *See Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 370–71 (D. Md. 2017) (denying motion to dismiss tortious interference claim based on specific contextual allegations that rendered the plaintiff's inferences of misconduct and malice reasonable); *Master Int'l*, 2013 WL 3147010, at *7 (denying motion to dismiss tortious interference claim based on similarly specific allegations that the defendants spread rumors and false statements to the plaintiffs' business partners, causing the loss of business).

Phreesia cites several cases from this Court that it argues support a different outcome. Each case is distinguishable. In *State Farm Mutual Automobile Insurance Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536 (D. Md. 2019), this Court dismissed a tortious interference claim based on underlying defamatory statements when the plaintiff failed to plausibly state a claim for defamation. *Id.* at 572. In language highlighted by Phreesia, the Court criticized the counterclaimant for not providing more information about the statements, including "the persons with whom [the defendant] communicated, what [it] said, and when [it] uttered the alleged falsehood." *Id.* But this was not the crux of the Court's reasoning. Rather, the claim failed at the third element because, absent defamation, the counterclaimant had failed to allege malice or any wrongful act. *Id.* Similarly, in *Metropolitan Financial Services v. Vales*, No. DKC-05-2330, 2005 WL 8174682 (D. Md. Nov. 14, 2005), this Court dismissed a tortious interference claim based on underlying defamation after dismissing the defamation claim and finding no other factual allegations from which to infer malice. *Id.* at *5; *see also S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp. 2d 837, 849–51 (D. Md. 2005) (dismissing tortious interference claim based on other alleged torts after dismissing the other torts). Indeed, in *Metropolitan Financial Services*, it was not even clear if the plaintiff had intended to bring a separate tortious interference claim. 2005 WL 8174682, at *5. Here, conversely, Certify alleges facts that, when read in context, allow the

Court to reasonably infer Phreesia spread a rumor and did so to scuttle the deal with Providence without any legitimate commercial motivation. And, in *Collective Shared Services, LLC v. CPDA Canvass Network, LLC*, No. GJH-19-1208, 2020 WL 1322944 (D. Md. Mar. 20, 2020), this Court dismissed a tortious interference claim for the failure to allege the fourth element, actual damage and loss. *Id.* at *8. Unlike Certify, the plaintiff in *Collective Shared Services* failed to identify any specific harm caused by the defendants' conduct; instead, it baldly asserted it suffered "economic loss and damage to its reputation and standing in the community" and "other consequential damages[.]" *Id.* This is a far cry from Certify's allegation that it lost the Providence contract.[2]

Finally, Phreesia argues Certify has not alleged the fourth element—that Phreesia's conduct caused Certify damage and loss—because Certify has not alleged specific factual allegations that support the "assumption that [Providence's] decision was in any way based on Providence learning of Phreesia's claims against Certify." ECF 47, at 20. Certify made a similar argument in its motion to dismiss Phreesia's unfair competition claim. ECF 28, at 23. The Court rejected that argument because, at this stage, it must draw all inferences in favor of the pleader. ECF 35, at 29–30. Just as Phreesia was able to plead that a third party selected Certify over it due to Certify's alleged misconduct and resulting unfair advantage—despite the possibility that other factors led to that decision—so too can Certify plead that Providence backed out of the potential relationship due to Phreesia's alleged misconduct. Providence planned to select Certify; it heard a rumor about Certify plausibly spread by Phreesia; Phreesia made its allegations against Certify

---

[2] Phreesia also discusses an unpublished Maryland case, *Alston v. Schuckit & Associates, P.C.*, CV 3048, 2020 WL 3639868 (Md. Ct. Spec. App. July 6, 2020). Unpublished cases in Maryland are not binding authority, and the Maryland courts counsel they should not be used as persuasive authority. In any event, *Alston* concerned the dismissal of a defamation claim and did not involve tortious interference.

known; and Providence walked away. That logical chain renders the allegation that Providence walked away because of Phreesia's conduct a reasonable inference and not impermissible speculation.

The motion to dismiss is denied as to Certify's tortious interference counterclaim.

### C. Unfair Competition

In Maryland, the tort of unfair competition is the "damaging or jeopardizing [of] another's business by fraud, deceit, trickery or unfair methods of any sort." *Elecs. Store, Inc. v. Cellco P'ship*, 732 A.2d 980, 991 (Md. Ct. Spec. App. 1999) (quoting *Balt. Bedding Corp. v. Moses*, 34 A.2d 338, 342 (Md. 1943)).

> What constitutes unfair competition in a given case is governed by its own particular facts and circumstances. Each case is a law unto itself, subject, only, to the general principle that all dealings must be done on the basis of common honesty and fairness, without taint of fraud or deception.

*Balt. Bedding*, 34 A.2d at 342. "Acts that can constitute unfair competition include those that 'substantially interfere[] with the ability to compete . . . or conflict[] with accepted principles of public policy.'" *Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 134–35 (D. Md. 2020) (quoting *Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675, 691 (D. Md. 2012) (quoting Restatement (Third) of Unfair Competition § 1 (1995))).

As to this counterclaim, Phreesia repeats its contentions that Certify has not alleged specific misconduct or harm resulting (i.e., that Phreesia's conduct "damage[d] or jeopardize[ed]" Certify's business). For the reasons already stated, Phreesia's arguments are unpersuasive. Certify plausibly alleges unfair competition because it alleges Phreesia engaged in unfair methods by deceiving Providence about Certify's competing product, which caused damage to Certify's business relationship with Providence. Such deception, if proven, fits within the broad scope of

13

the tort. *See* Restatement (Third) of Unfair Competition § 1 cmt. g, illus. 5 (1995) (suggesting the publication of known falsehoods about a competitor's product constitutes unfair competition).

The motion to dismiss is denied as to the unfair competition counterclaim.

**D. Litigation Privilege**

Phreesia argues that Certify's counterclaims are barred by Maryland's litigation privilege. Maryland courts recognize "a limited, but absolute privilege" for statements made in the course of litigation. *Gill v. Ripley*, 724 A.2d 88, 92 (Md. 1999). "This absolute immunity extends to the judge as well as to witnesses and parties to the litigation, for defamatory statements uttered in the course of a trial or contained in pleadings, affidavits, depositions, and other documents directly related to the case." *Di Blasio v. Kolodner*, 197 A.2d 245, 250 (Md. 1964). For statements made in a judicial proceeding by witnesses, parties, and judges, Maryland courts "employ the 'English' rule, which provides that the putative tortfeasor enjoys absolute immunity from civil liability, even if the statement is wholly unrelated to the underlying proceeding." *Norman v. Borison*, 17 A.3d 697, 708 (Md. 2011). What matters is that "the letter, email, or conversation had some general 'relevance,' relationship, or connection to that proceeding." *Id.* at 713 n.17. The privilege most commonly protects against defamation actions, but it "is not confined in the law of torts to matters of defamation." *O'Brien & Gere Engineers, Inc. v. City of Salisbury*, 135 A.3d 473, 483 (Md. 2016) (quoting *Walker v. D'Alesandro*, 129 A.2d 148, 151 (Md. 1957)); *see also Mixter v. Farmer*, 81 A.3d 631, 636–37 (Md. Ct. Spec. App. 2013) (applying privilege to other torts).

The Court cannot resolve the applicability of the litigation privilege at this time. It is not clear whether, when, and how Providence learned about Phreesia's allegations against Certify. As a result, the Court cannot answer whether any potential statements by Phreesia were made in the course of litigation. Phreesia takes the position that the only alleged basis for Certify's belief that

14

Providence learned about Phreesia's claims against Certify is the initiation of the New York lawsuit. If the statements giving rise to Certify's counterclaims are contained in Phreesia's complaint or other related litigation documents, the litigation privilege likely would apply. But Certify alleges that "Phreesia informed Providence" of its claims and, "shortly thereafter," initiated the New York lawsuit. ECF 37, ¶ 19. If Phreesia communicated directly with Providence and made statements other than those in its complaint and related litigation documents, then the privilege might not apply to those statements.[3] In the absence of a factual record, and drawing all reasonable inferences in Certify's favor, the Court concludes that the privilege might not apply to Phreesia's conduct and, as a result, does not bar Certify's counterclaims at this stage.

### IV. Conclusion

The heightened pleading standard of Rule 9(b) does not apply because Certify's counterclaims are not rooted in fraud. Certify plausibly alleges tortious interference and unfair competition under Rule 8. The applicability of the litigation privilege cannot be resolved at this time. The motion to dismiss is denied.

Date: November 29, 2022

Deborah L. Boardman
United States District Judge

---

[3] The Maryland courts have extended the privilege to out-of-court and pre-litigation statements in limited circumstances. *See, e.g.*, *Norman*, 17 A.3d at 717–18 (holding privilege applied to statements by attorney promoting contemplated class action and stating "but for the fact that the . . . suit was striving to become a class action, our conclusion might have been different"); *Adams v. Peck*, 415 A.2d 292 (Md. 1980) (holding privilege applied to psychiatrist's report that was "prepared for possible use in connection with a pending judicial proceeding but which ha[d] not been filed in that proceeding"); *Kennedy v. Cannon*, 182 A.2d 54, 58 (Md. 1962) (holding privilege did not apply to defense attorney's statement to a reporter). The applicability of the privilege in such cases depends on "the context of the statement[,]" including "the overall or general reason" for the communication containing it and to whom it was made. *Norman*, 17 A.3d at 713. Certify's allegations do not answer these questions.